USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 05/23/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
INDEMNITY INSURANCE COMPANY OF  :
NORTH AMERICA A/S/O GE MEDICAL  :
SYSTEMS TRADE AND DEVELOPMENT :
(SHANGHAI) CO., LTD.,  :    1:18-cv-7093-GHW
     :
                     Plaintiff,  :    MEMORANDUM OPINION
     :          AND ORDER
              -against-  :
     :
EXPEDITORS INTERNATIONAL OF  :
WASHINGTON, INC., EXPEDITORS JAPAN  :
KK, and NIPPON CARGO AIRLINES,  :
     :
                   Defendants.  :
-----------------------------------------------------------------X

GREGORY H. WOODS, United States District Judge:

        Indemnity Insurance Company of North America ("Plaintiff" or "Indemnity") filed this suit against Expeditors International of Washington, Inc. ("EIW") and Expeditors Japan KK ("EXPJapan" and collectively with EIW, "Defendants")[1] seeking recovery for cargo damaged during international transportation. Defendants have moved to dismiss Plaintiff's complaint under Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6). Dkt. No. 25. The Court finds that Plaintiff has made a sufficient showing of subject matter jurisdiction and that Defendants' argument regarding Plaintiff's failure to provide notice is not a proper ground for dismissal under Rule 12(b)(6). However, the Court agrees with Defendants that Plaintiff has not made a *prima facie* showing of the Court's personal jurisdiction over EXPJapan. Therefore, Defendants' motion is DENIED in part and GRANTED in part.

---

[1] Plaintiff voluntarily dismissed Defendant Nippon Cargo Airlines from this case on October 15, 2018. Dkt. No. 24.

## I. BACKGROUND

General Electric Company and its affiliate, GE Medical Systems Trade and Development (Shanghai) Co. (collectively "GE") are parties to a Global Air Freight Transportation Contract ("Global Contract") executed between members of the Global Shipper's Association and EIW. Declaration of Colleen Gillespie, Dkt. No. 28 ("Gillespie Decl."), at Ex. 1. Pursuant to that contract, EIW agreed to provide transportation services to GE at defined rates for certain routes. Declaration of Michael P. Barbato, Dkt. No. 31 ("Barbato Decl."), at ¶¶ 2, 3. One of the negotiated routes—also known as "keylanes"—runs between Hino-shi, Japan and Shanghai, China. *Id.* at ¶ 3.

Pursuant to that contract, EXPJapan shipped a LightSpeed VCT CAT scan machine on behalf of GE from Tokyo, Japan to Shanghai, China. Compl. ¶¶ 1, 10. EXPJapan issued an Air Waybill to GE, which also listed EXPJapan as the "Issuing Carrier's Agent." Declaration of Norihiko Kishi, Dkt. No. 29 ("Kishi Decl."), at Ex. 1. The machine was damaged during transportation, forcing GE to order a replacement at a cost of $359,585.31. Compl. ¶ 11. Plaintiff, GE's insurer, brought this case as subrogee of GE.

## II. LEGAL STANDARD

"Normally, motions to dismiss for lack of jurisdiction pursuant to [Federal Rule of Civil Procedure] 12(b)(1) must be decided before motions pursuant to other Federal Rules of Civil Procedure are considered, since dismissal of an action for lack of subject matter jurisdiction will render all other accompanying defenses and motions moot." *Liberty Ridge LLC v. RealTech Sys. Corp.*, 173 F. Supp. 2d 129, 134 (S.D.N.Y. 2001) (internal alterations and citation omitted); *see also Burris v. Hous. & Servs. Inc.*, No. 17-CV-9289 (JGK), 2019 WL 1244494, at *1 (S.D.N.Y. Mar. 18, 2019). "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction. But where jurisdictional facts are placed in dispute, the court has the power and

obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits. In that case, the party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (internal alterations and citations omitted); *see also Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

"To defeat a motion to dismiss for lack of personal jurisdiction [under Federal Rule of Civil Procedure 12(b)(2)], a plaintiff must make a *prima facie* showing that jurisdiction exists. Such a showing entails making legally sufficient allegations of jurisdiction, including an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant. A plaintiff must have a state-law statutory basis for jurisdiction and demonstrate that the exercise of personal jurisdiction comports with due process." *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 81-82 (2d Cir. 2018) (internal alterations omitted) (quoting *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34-35 (2d Cir. 2010)); *see also SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 342-43 (2d Cir. 2018).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege facts that—if accepted as true—are sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a complaint need not assert "detailed factual allegations," *Twombly*, 550 U.S. at 555, legal conclusions, unsupported by factual assertions, are insufficient. *Iqbal*, 556 U.S. at 678. When deciding a motion to dismiss under Rule 12(b)(6), "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citation omitted).

3

## III. DISCUSSION

### A. Plaintiff has adequately demonstrated that EIW was an indirect carrier in the underlying transaction and thus has established that the Court has subject matter jurisdiction over this case.

Plaintiff's complaint includes two causes of action—breach of contract and breach of bailment obligations—resulting from damage Defendants allegedly caused to GE's shipment of the CAT scan machine during transportation. Although Plaintiff's claims sound in state law, the parties agree that causes of action arising as a result of damage caused by an air carrier in international transport are completely preempted by the Convention for the Unification of Certain Rules for International Carriage by Air, commonly known as the "Montreal Convention."[2] Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999 (entered into force on Nov. 4, 2003), reprinted in S. Treaty Doc. No. 106–45, 1999 WL 33292734. The claims at issue in this case thus fall within the Court's "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States," pursuant to 28 U.S.C. § 1331. S*ee Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987) (an action asserting remedies under state law arises under federal law if federal law "completely preempts" the cause of action).

---

[2] Neither the Supreme Court nor the Second Circuit has specifically held that the Montreal Convention completely preempts state law claims. However, the Montreal Convention is the successor to the Convention for the Unification of Certain Rules Relating to International Transportation by Air, October 12, 1929, 49 Stat. 3000, T.S. No. 876, reprinted at 49 U.S.C.A. § 40105 (the "Warsaw Convention"), and both govern "all international carriage of persons, baggage, or cargo," whether for reward or performed gratuitously by an "air transport undertaking." Montreal Convention, Art. 1.1. Thus, courts regularly apply interpretations of the Warsaw Convention to similar provisions of the Montreal Convention. *Best v. BWIA W. Indies Airways Ltd.*, 581 F. Supp. 2d 359, 362 n.1 (E.D.N.Y. 2008). The Supreme Court has held that "recovery for a personal injury suffered on board an aircraft or in the course of any of the operations of embarking or disembarking, if not allowed under the [Warsaw] Convention, is not available at all." *El Al Isr. Airlines, Ltd. v. Tsui Yuan Tseng*, 525 U.S. 155, 161 (1999) (internal alteration and quotation omitted). "Further, the Second Circuit has described the Warsaw Convention as 'creating a comprehensive liability system to serve as the exclusive mechanism for remedying injuries suffered in the course of the international transportation of persons, baggage, or goods performed by aircraft.'" *Mateo v. JetBlue Airways Corp.*, 847 F. Supp. 2d 383, 386 (E.D.N.Y. 2012) (quoting *King v. American Airlines, Inc.*, 284 F.3d 352, 356-57 (2d Cir. 2002)). "There is no reason to conclude that the Montreal Convention is of more limited scope than the Warsaw Convention, and the two Conventions 'have substantially the same preemptive effect.'" *Id.* (quoting *Paradis v. Ghana Airways Ltd.*, 348 F. Supp. 2d 106, 111 (S.D.N.Y. 2004). *See also Mullaney v. Delta Air Lines, Inc.*, No. 08 Civ. 7324(CM)(THK), 2009 WL 1584899, at *1 (S.D.N.Y. June 3, 2009); *Kamanou-Goune v. Swiss Int'l Airlines*, No. 08 Civ. 7153(SCR)(GAY), 2009 WL 874600, at *4 (S.D.N.Y. Mar. 27, 2009); *Certain Underwriters at Lloyd's London v. Art Crating, Inc.*, No. 12-CV-5078 NGG VMS, 2014 WL 123488, at *10 (E.D.N.Y. Jan. 10, 2014).

However, to exercise subject matter jurisdiction over a case arising under the Montreal Convention, the Court must additionally determine that it is a proper forum under the Convention's jurisdiction article. Montreal Convention, Art. 33.1. Article 33.1 states: "An action for damages must be brought . . . before the court of the domicile of the carrier or of its principal place of business, or where it has a place of business through which the contract has been made or before the court at the place of destination." *Id.* "This Article is jurisdictional in nature and the points of jurisdiction it specifies are national in scope. If, in any given action, the United States is not one of the fora specified by Article [33], the federal courts lack treaty jurisdiction under the Convention and therefore federal subject matter jurisdiction over the controversy." *In re Air Disaster Near Cove Neck, N.Y., on Jan. 25, 1990*, 774 F. Supp. 725, 726 (E.D.N.Y. 1991) (internal citation omitted) (interpreting Article 28.1 of the Warsaw Convention).

Defendants argue that the United States is not a proper forum for this action because only EXPJapan—which is neither domiciled nor has its principle place of business in the United States—and not EIW—a Washington corporation—was the "carrier" for this transaction. However, courts in this district have defined two classes of carriers—direct and indirect—both of which are covered by the Montreal Convention. "[D]irect air carriers are those who operate aircraft, while indirect air carriers hold out a transportation service to the public under which they utilize the services of a direct carrier for the actual transportation by air." *Royal Ins. v. Amerford Air Cargo*, 654 F. Supp. 679, 682 (S.D.N.Y. 1987) (quoting *DHL Corp. v. Civil Aeronautics Board*, 584 F.2d 914, 915 (9th Cir. 1978)). More simply, "direct carriers perform the actual transportation, while indirect carriers provide supportive services, including procuring and assembling cargo for shipment, consolidating multiple shipments into a single shipment for carriage, and arranging transportation with the direct carrier." *Martin Marietta Corp. v. Harper Grp.*, 950 F. Supp. 1250, 1256 (S.D.N.Y. 1997). "In short, for purposes of being a carrier, it is insignificant that [a party] did not actually transport the cargo,

5

either by air or otherwise, since an indirect air carrier by definition need not be involved in the physical transportation of the goods." *Id.* at 1256.[3]

In this case, EIW negotiated the Global Contract with the Global Shipper's Association, of which GE is a member. Barbato Decl. at ¶¶ 2, 3. "Expeditors agreed to provide transportation services at a defined rate" for certain shipping routes, called "keylanes." *Id.* The transaction at issue in this case was executed pursuant to that agreement, and was included in a monthly data file sent by EIW, which listed all shipment activity occurring under the Global Contract. *Id.* at ¶ 4. Given these detailed assertions, EIW's conclusory claim that it played "absolutely no role whatsoever in forwarding or transportation of that cargo," Gillespie Decl. at ¶ 5, is inadequate to support its position.[4]

Defendants' argument rests on their single assertion that EIW was not a carrier for this transaction because "[i]n international aviation transportation, an entity's status as an air carrier is derived from an air waybill." Defendants' Memorandum in Support of Pre-Answer Motion for Dismissal of Plaintiff's Complaint, Dkt. No. 26 ("Def. Mem."), at 6. But Defendants do not offer a single legal authority that supports the proposition that the air waybill provides the sole, conclusive evidence of an entity's carrier status.[5] And even if the Court accepted Defendants' argument, the air waybill at issue in this case supports the conclusion that EIW was an indirect carrier for this transaction. The terms and conditions to the air waybill presented by EXPJapan define carrier as "all carriers that carry or undertake to carry the cargo hereunder or *perform any other services incidental to*

---

[3] The Court notes that the Montreal Convention does not define the term "carrier" and does not mention the term "indirect carrier." Instead, the concept of an "indirect carrier" derives from federal aviation law and has been applied by courts in this district to interpret the scope of the Warsaw Convention. *See Am. Home Assur. Co. v. Jacky Maeder (Hong Kong) Ltd.*, 969 F. Supp. 184, 191 n.5 (S.D.N.Y. 1997) (recognizing that "the validity of the 'indirect' carrier doctrine is not unassailable," but noting its adoption by a number of courts).

[4] Indeed, Defendants appear to implicitly acknowledge that the terms of the Global Contract were relevant to the transaction at issue in this case. Defendants' Memorandum in Support of Pre-Answer Motion for Dismissal of Plaintiff's Complaint, Dkt. No. 26 ("Def. Mem."), at 3.

[5] In *Royal Insurance*, for instance, the fact that the entity issued the air waybill was considered as one of several factors in the court's analysis of the entity's status as an "indirect carrier." 654 F. Supp. at 682

*such air carriage.*" Declaration of Michael E. Stern, Dkt. No. 33 ("Stern Decl."), at Ex. 1 ¶ 1.1 (emphasis added). The terms and conditions also describe EIW as an indirect carrier. *Id.* at Ex. 1 ¶ 17 ("Expeditors, like all indirect air carriers . . . ."). It is not clear to the Court how—under the definition of carrier provided in the air waybill itself—EIW's role in negotiating the rates for the shipment at issue in this case and providing Plaintiff with documentation regarding that shipment would not qualify as "perform[ing] . . . services incidental to such air carriage." Therefore, the Court finds, at this juncture, that Plaintiff has sufficiently demonstrated that EIW was a carrier for the underlying transaction and that the Court has subject matter jurisdiction over this action.[6]

### B. Plaintiff has not made a *prima facie* showing of personal jurisdiction as to Defendant EXPJapan.

Defendants also argue that this case must be dismissed as to Defendant EXPJapan for lack of personal jurisdiction. The Court agrees.

Plaintiff's complaint does not contain a single allegation connecting EIW or EXPJapan to the State of New York. Even a generous reading of Plaintiff's opposition to Defendants' motion to dismiss reveals only a handful of averments which relate in any way to the Court's jurisdiction over EXPJapan. Plaintiff points to the two ways in which EIW was involved in the shipment at issue in this case—*i.e.*, EIW's negotiation and execution of the Global Contract and its issuance of the monthly data file to GE. Plaintiff's Memorandum of Law in Opposition to Defendant Expeditors' Motion to Dismiss, Dkt. No. 30 ("Pls. Mem."), at 4. Plaintiff notes that the Global Contract—to which EXPJapan was not a party—contains a provision requiring that all actions "arising out of or

---

[6] Defendants' memorandum includes a stand-alone section entitled "EIW was Not Involved in the Subject Transport." Def. Mem. at 6-8. The overarching theme of this section of Defendants' briefing is that EIW was not a carrier in the transaction at issue. Whether EIW was a carrier has clear legal significance for the question of subject matter jurisdiction. However, it is not clear whether Defendants also intended this argument to present a separate basis for dismissal under Federal Rule of Civil Procedure 12(b)(6). This section of the briefing never once refers to the sufficiency of Plaintiff's pleading and, in fact, argues that the "*[e]vidence establishes* that EIW played no role in the transport at issue." Def. Mem. at 5. The Court therefore declines to interpret this argument as a defense brought under Rule 12(b)(6).

7

relating to this Contract must be brought in the state of New York." *Id.* at 4-5. It also alleges that EXPJapan is a wholly owned subsidiary of EIW. *Id.* at 3. And finally, it claims that "the terms and conditions of [the] air waybill . . . conclusively demonstrate[] that Expeditors Japan is acting as agent and on behalf of Expeditors International." *Id.* at 4. These alleged facts are simply insufficient to constitute a *prima facie* showing that the Court has personal jurisdiction over EXPJapan.

Plaintiff appears to argue that the Court can exercise personal jurisdiction over EXPJapan because EXPJapan was an agent or subsidiary of EIW, over whom the Court has jurisdiction pursuant to the Global Contract.[7] "A court may exercise personal jurisdiction over a subsidiary based on its jurisdiction over the parent company only when the subsidiary is an 'alter ego' or 'mere department' of the parent company." *Fagan v. Republic of Austria*, No. 08 CIV. 6715 LTS JCF, 2011 WL 1197677, at *17 (S.D.N.Y. Mar. 25, 2011). But the fact that EIW may have been involved in the shipment at issue in this case is a far cry from adequately pleading that EXPJapan is EIW's alter ego. And the terms and conditions of the air waybill say nothing about the relationship between EIW and EXPJapan, other than simply referring to EIW and its subsidiaries and affiliates jointly as "Expeditors."

Plaintiff claims that "[w]ithout discovery, motions to dismiss based on lack of jurisdiction are construed in plaintiff's favor." Pls. Mem. at 5-6. As a general matter, that is correct. But Plaintiff has not provided the Court with anything to construe. It has not alleged *any* facts that would suggest a relationship between EIW and EXPJapan that would allow the Court to exercise personal jurisdiction over EXPJapan based on its alleged jurisdiction over EIW. Furthermore, because Plaintiff has not made out a *prima facie* case of personal jurisdiction over EXPJapan, the Court sees no basis to grant its request for jurisdictional discovery. *See Laydon v. Bank of Tokyo-Mitsubishi UFJ,*

---

[7] The Court takes no position on the issue of whether it does in fact have personal jurisdiction over EIW based on the exclusive jurisdiction provision of the Global Contract. Because EIW has not raised the defense in its motion to dismiss, it is waived. Fed. R. Civ. P. 12(h)(B)(i).

8

*Ltd.*, No. 12 CIV. 3419 (GBD), 2017 WL 1113080, at *8 (S.D.N.Y. Mar. 10, 2017) ("District courts in this Circuit routinely reject requests for jurisdictional discovery where a plaintiff's allegations are insufficient to make out a *prima facie* case of jurisdiction." (quoting *Stutts v. De Dietrich Grp.*, 465 F. Supp. 2d 156, 169 (E.D.N.Y. 2006))); *Fashion Television LLC v. APT Satellite Co. Ltd.*, No. 17-CV-5413-LTS-SN, 2018 WL 4300526, at *4 (S.D.N.Y. Sept. 10, 2018); *Giar v. Centea*, No. 02 CIV. 7916 (LLS), 2003 WL 1900836, at *2 (S.D.N.Y. Apr. 16, 2003), *aff'd sub nom. Giar v. Centea*, 86 F. App'x 461 (2d Cir. 2004). Defendant EXPJapan's motion to dismiss for lack of personal jurisdiction is granted.

### C. Plaintiff has sufficiently pled compliance with the Montreal Convention.

Defendants finally argue that the Court must dismiss Plaintiff's complaint for failure to comply with Article 31.2 of the Montreal Convention, which states that "the person entitled to delivery must complain to the carrier forthwith after discovery of the damage, and at the latest, within . . . fourteen days from the date of receipt in the case of cargo." But Defendants' argument ignores the standard for a motion to dismiss under Rule 12(b)(6). Instead of arguing that the allegations in Plaintiff's complaint are insufficient, it instead claims that—as a matter of fact—"[n]either plaintiff nor GE Medical Systems gave preliminary notice of claim to EXPJapan at all, and gave notice of claim to EIW . . . only 18 or 19 days after its receipt of the cargo." Def. Mem. at 12.[8]

While Defendants may be correct that Plaintiff was required to provide notice of its dissatisfaction with the condition of the shipment—and that Plaintiff's failure to provide such notice may ultimately bar it from recovery—Defendants have offered no support for the contention that Article 31.2 of the Montreal Convention creates an affirmative pleading standard. Because the

---

[8] The Court notes that the parties have provided the Court with a Statement of Uncontested Facts, Dkt. No. 27, and Plaintiff's Response to Defendants' Statement of Uncontested Facts, Dkt. No. 32. Those statements have no relevance in the context of a Rule 12(b)(6) motion and the Court declines to consider them for purposes of its analysis of this issue. To the extent that a Defendant wishes to move for summary judgment under Rule 56 on the issue of Plaintiff's failure to provide notice, it is free to do so.

9

Court finds no support for that theory, it will not impose such a pleading standard in this case. Therefore, Defendants' motion to dismiss under Rule 12(b)(6) is denied.

## IV. CONCLUSION

For the foregoing reasons, EXPJapan's motion to dismiss under Rule 12(b)(2) is GRANTED and EIW's motion to dismiss under Rules 12(b)(1) and 12(b)(6) is DENIED. The Clerk of Court is directed to remove Defendant EXPJapan from the list of active Defendants in this case and to terminate the motion pending at Dkt. No. 25.

SO ORDERED.

Dated: May 23, 2019  
New York, New York

GREGORY H. WOODS  
United States District Judge