USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/20/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
INDEMNITY INSURANCE COMPANY OF
NORTH AMERICA A/S/O GE MEDICAL
SYSTEMS TRADE AND DEVELOPMENT
(SHANGHAI) CO., LTD.,

                              Plaintiff,

-against-

EXPEDITORS INTERNATIONAL OF
WASHINGTON, INC., EXPEDITORS JAPAN
KK, and NIPPON CARGO AIRLINES,

                              Defendants.
-------------------------------------------------------------------X

1:18-cv-07093-GHW

MEMORANDUM OPINION
AND ORDER

GREGORY H. WOODS, United States District Judge:

Plaintiff Indemnity Insurance Company of North America ("IINA") brought this case under the Montreal Convention, claiming that Defendant Expeditors International of Washington, Inc. ("EIW") is liable for damage sustained by cargo shipped by IINA's insured, GE Medical Systems Trade and Development (Shanghai) Co. ("GE Medical"), during transit from Japan to China. EIW has moved for summary judgment, arguing that GE Medical failed to provide timely notices of claim as required by both the Montreal Convention and a global shipping contract between EIW and GE Medical's parent company, General Electric Company ("GE"). Because there are disputed issues of fact regarding the notice provided by GE Medical, EIW's motion for summary judgment is DENIED.

## I. BACKGROUND

The Court views the facts in the light most favorable to the non-moving party. *See Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012). Unless otherwise indicated, the following facts are undisputed.

In August 2016, GE Healthcare Japan Corporation ("GE Healthcare") shipped a LightSpeed VCT CT scan machine from Tokyo, Japan to its affiliate, GE Medical, in Shanghai, China. Response to Defendant's Rule 56.1 Statement and Counter-Statement of Undisputed Material Facts, Dkt. No. 54 ("56.1 Stmt."), at ¶ 4; Declaration of Norihiko Kishi, Dkt. No. 50 ("Kishi Decl."), at Ex. 1. Although the parties agree that EIW and GE are parties to a "Global Air Freight Transportation Contract" (the "Global Contract"), which purports to bind GE's affiliates, they have not provided the Court with any of the operative provisions of that contract or any evidence that the shipment at issue here was executed pursuant to that contract.[1] 56.1 Stmt. at ¶¶ 6, 8. The Air Waybill for the shipment was issued by Expeditors Japan KK ("EXPJapan"), one of EIW's subsidiaries.[2] *Id.* at ¶¶ 2, 10; Kishi Decl. at ¶¶ 2-5, Ex. 1. EXPJapan arranged for Nippon Cargo Airlines to transport the machine on one of Nippon's planes. 56.1 Stmt. at ¶ 5. Plaintiff IINA insured the shipment. *Id.* at ¶ 3.

GE Healthcare delivered the cargo to EXPJapan in Narita, Japan. Expeditors' Response to Plaintiff's Counter-Statement of Undisputed Material Facts, Dkt. No. 60 ("56.1 Counter-Stmt."), at

---

[1] Instead, both parties appear to take the position that the Court's prior decision on Defendants' motion to dismiss resolved the question of whether the Global Shipping Contract applied to the shipment at issue here. As discussed in greater detail in Part III.B, the parties misinterpret the Court's prior decision.

[2] Although Plaintiff denied that EXPJapan is EIW's subsidiary in its reply to Defendant's 56.1 Statement, Plaintiff failed to cite to any record evidence to support its denial. *See* 56.1 Stmt. at ¶ 2. A party opposing summary judgment must respond with a statement of facts as to which a triable issue remains. *See* Local Rule 56.1(b). The facts set forth in a moving party's statement "will be deemed to be admitted for purposes of the motion unless specifically controverted" by the opposing party's statement. Local Rule 56.1(c). Local Rule 56.1(d) further provides that "[e]ach statement of material fact by a movant or opponent must be followed by citation to evidence which would be admissible," as required by Fed. R. Civ. P. 56(e). "'[D]istrict courts in the Southern and Eastern Districts of New York' with the approval of the Second Circuit, 'have interpreted current Local Rule 56.1 to provide that where there are no citations or where the cited materials do not support the factual assertions in the Statements, the Court is free to disregard the assertion.'" *CVS Pharmacy, Inc. v. Press Am., Inc.*, 377 F. Supp. 3d 359, 387 n.11 (S.D.N.Y. 2019) (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73-74 (2d Cir. 2001)). Because Plaintiff failed to present evidence supporting its denial of EIW's statement of fact, the Court deems the fact admitted for purposes of this motion. *See id.*

¶ 20. According to the Air Waybill, the shipment departed Japan on August 8, 2016.[3]  56.1 Stmt. at ¶ 11.

The parties agree that the shipment arrived at the Shanghai Pudong International Airport on August 11, 2016.  *Id.* at ¶ 12; 56.1 Counter-Stmt. at ¶ 20.  What happened to the shipment after it arrived, however, is less than clear.  According to an August 3, 2018 report issued by Tony Zhang, a loss adjuster for McLarens—which appears to record the findings of an investigation into an insurance claim, presumably submitted by GE for the damaged cargo[4]—"the [shipment] was collected from the air cargo terminal at Shanghai Airport on 11 August 2016 by [GE Medical's] appointed haulier [sic] for final delivery to [GE Medical's] premises, located in Shanghai."  Declaration of Steven W. Block, Dkt. No. 49 ("Block Decl."), Ex. 1 at 2.  A "Cargo Delivery Status Report," dated August 11, 2016 and issued on the letterhead of a company named Shanghai Eastern Logistics Co., Ltd. ("Shanghai Eastern"), documents damage discovered at the time of the cargo's delivery in Shanghai.[5]  Kishi Decl. at Ex. 2.  Norihiko Kishi, a manager for EXPJapan, testified that the Shanghai Eastern report confirms that the shipment was delivered to GE Medical on August 11, 2016.  Kishi Decl. at ¶ 6.  That testimony implies that Shanghai Eastern was responsible for delivering the cargo from the airport in Shanghai to GE Medical.

---

[3] Other documents, such as EIW's invoice, suggest that the shipment may not have departed Tokyo until August 9th or 10th.  *See* Declaration of Steven W. Block, Dkt. No. 49 ("Block Decl."), at Ex. 2; Kishi Decl. at Ex. 2.

[4] Although EIW has not provided any foundational evidence regarding this report, Plaintiff failed to challenge the admissibility of this document in its opposition briefing.  The Court takes no position at this time regarding the ultimate admissibility of this document or any potential hearsay objections.  Although the document provides some useful context, it is ultimately not necessary to the Court's conclusion that disputed issues of fact preclude summary judgment on the notice issue.

[5] At some point on or before August 17, 2016, this status report was provided to EIW, as evidenced by an internally prepared EIW "Cargo Delivery Status Report" containing nearly identical information and dated August 17, 2016.  56.1 Counter-Stmt. at ¶ 22.

However, other evidence put forth by EIW suggests a different course of events. EIW submitted a declaration from Benjamin Shen, a manager in its Shanghai office, which states that Shanghai Eastern is a company that provides trucking services at the Shanghai airport.[6] Declaration of Benjamin Shen, Dkt. No. 59 ("Shen Decl."), at ¶¶ 1, 3. Mr. Shen asserts that Shanghai Eastern transported the cargo from the airport terminal to EIW's warehouse at the airport. *Id.* at ¶ 3. Mr. Shen avers that the cargo was then picked up from EIW's warehouse later on August 11, 2016 by a different company—Shanghai Waigaoqiao International Trading Operation Center Co. ("Shanghai Waigaoqiao International")—for delivery to GE Medical.[7] *Id.* at ¶ 4. Attached to Mr. Shen's declaration is a document which he claims to be a proof of delivery receipt, noting no damage to the cargo and signed by the trucker for Shanghai Waigaoqiao International on August 11, 2016. *Id.* at ¶ 5, Ex. 1. That document is written almost entirely in Chinese and EIW did not provide a translated version to the Court.[8] However, the Court notes that while several dates do appear in English on the face of the document—including August 10th and August 17th—August 11, 2016 is not one of them. *Id.* at Ex. 1.

On August 29, 2016, GE Medical issued a "Claim Notice to Carrier" to EIW, which stated in relevant part: "We hereby file claim for (state figure) CNY [Chinese Yuan] 3770000 damages

---

[6] Mr. Shen's declaration was first provided to the Court as part of EIW's reply in support of its motion for summary judgment. As a general rule, the Court does not normally consider evidence submitted for the first time on reply. *See Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc.*, 687 F. Supp. 2d 381, 387 (S.D.N.Y. 2010) ("It is plainly improper to submit on reply evidentiary information that was available to the moving party at the time that it filed its motion and that is necessary in order for that party to meet its burden."). EIW has offered no explanation for its failure to provide this evidence at the time it filed its motion. However, because the evidence underscores the factual ambiguities in the record presented by EIW, the Court will consider it for purposes of evaluating whether EIW has met its burden of showing that there are no disputes of material fact.

[7] Although Mr. Shen refers to the date "August 11, 2019" in this portion of his declaration, the Court assumes based on its familiarity with the record that Mr. Shen intended to refer to August 11, 2016.

[8] EIW offers no explanation for why it failed to provide the Court with a translation of what appears to be a key piece of documentary evidence.

and/or loss to the above-described shipment. We hold you responsible for the above loss and demand restitution. As soon as the final amount is ascertained, details will be furnished to you." Declaration of Colleen Gillespie, Dkt. No. 51 ("Gillespie Decl."), at Ex. 2; 56.1 Counter-Stmt. at ¶ 23. EIW acknowledged receipt of this claim notice. 56.1 Counter-Stmt. at ¶ 23. GE Medical later made a claim to its insurer IINA for the loss, and IINA ultimately paid GE Medical $359,585.31 in full satisfaction of that claim. 56.1 Stmt. at ¶ 13.

## II. LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" (quoting former Fed. R. Civ. P. 56(c))). A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

The movant bears the initial burden of demonstrating "the absence of a genuine issue of material fact," and, if satisfied, the burden then shifts to the non-movant to present "evidence sufficient to satisfy every element of the claim." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex*, 477 U.S. at 323). To defeat a motion for summary judgment, the non-movant "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting former Fed. R. Civ. P. 56(e)).

In determining whether there exists a genuine dispute as to a material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson*, 680 F.3d at 236 (internal quotation marks and citation omitted). The Court's job is not to "weigh the evidence or resolve issues of fact." *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 254 (2d Cir. 2002) (citation omitted); *see also Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996) ("In applying th[e] [summary judgment] standard, the court should not weigh evidence or assess the credibility of witnesses."). "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citation omitted).

## III. DISCUSSION

### A. Disputed issues of fact preclude the Court from concluding that Plaintiff's August 29, 2016 notice was untimely as a matter of law.

Plaintiff's claims are brought under the Convention for the Unification of Certain Rules for International Carriage by Air, commonly known as the "Montreal Convention." *Indem. Ins. Co. of N. Am. v. Expeditors Int'l of Wash., Inc.*, 382 F. Supp. 3d 302, 307-08 (S.D.N.Y. 2019) (citing Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999 (entered into force on Nov. 4, 2003), reprinted in S. Treaty Doc. No. 106–45, 1999 WL 33292734). Article 31.2 of the Montreal Convention requires that, as a prerequisite to any action for damages to cargo, "the person entitled to delivery must complain to the carrier forthwith after discovery of the damage, and at the latest, within . . . fourteen days from the date of receipt in the case of cargo." If no complaint is made within that window, "no action shall lie against the carrier." *See Molefe v. KLM Royal Dutch Airline*, 602 F. Supp. 2d 485, 496 (S.D.N.Y. 2008) (quoting Montreal Convention, Art. 31). Because it is undisputed that GE Medical provided EIW with a notice of claim on August 29, 2016, *see* 56.1 Stmt. at ¶ 14, in order to prevail on its motion for summary judgment, EIW must produce undisputed evidence that "the person entitled to delivery" "received" the cargo by no later than

August 14, 2016. EIW argues that because GE's agent picked up the shipment from EIW's warehouse on August 11, 2016, GE is now barred from asserting a claim for damages against EIW.[9] EIW is not entitled to summary judgment on this basis.

EIW's own evidence demonstrates that there is a disputed issue of fact regarding the date that the shipment at issue was collected from EIW's warehouse for delivery to GE Medical. Although the parties agree that Shanghai Eastern came into possession of the cargo at some point on August 11, 2016, the evidence regarding Shanghai Eastern's role in the shipment—*i.e.*, whether it was the entity that delivered the shipment from the airport to GE or whether it simply transported the cargo from the airline terminal to EIW's warehouse—is mixed. *Compare* Kishi Decl. at ¶ 6, Ex. 2 *with* Shen Decl. at ¶ 3. And while Mr. Shen claims that Shanghai Waigaoqiao International picked up the shipment on August 11, 2016 for delivery to GE Medical, the documentary evidence attached to his declaration references several dates, not one of which is August 11th. Shen Decl. at ¶¶ 4-5, Ex. 1. On this record, the Court cannot conclude as a matter of law that the package was delivered to a "person entitled to delivery" more than 14 days before the August 29, 2016 notice was issued.

Although it need not reach this issue, the Court also notes that the case law EIW cites in support of its theory that the "person entitled to delivery" can be an agent of the consignee says no such thing. In *Ewig Int'l Marine Corp.*, the court did not—as EIW claims—"recogniz[e] a consignee's customs broker as 'the person entitled to delivery,'" but instead simply stated as a matter of fact that

---

[9] EIW also claims that Plaintiff's claims are barred under the terms of the Global Contract, which states: "Forwarder [EIW] will not be liable for any act, omission or default in connection with the Services unless a preliminary notice of claim is presented within fourteen (14) days from date of Service." 56.1 Stmt. at ¶ 9. For the reasons discussed in Section III.B of this opinion, EIW has not sufficiently demonstrated that the terms of the Global Contract apply to the transaction at issue in this case. Nor is it clear that the preliminary notice requirement in the Global Contract imposes different or more stringent terms than those set forth in the Montreal Convention, or that the imposition of more stringent notice terms by contract would be permissible under the Montreal Convention. *See* Montreal Convention, Art. 27 ("Nothing contained in this Convention shall prevent the carrier from . . . laying down conditions *which do not conflict with the provisions of this Convention.*" (emphasis added)).

7

neither the intended recipient nor its customs broker ever received the goods in question. *Ewig Int'l Marine Corp. v. Am. Airlines, Inc.*, 914 F. Supp. 1543, 1551 (N.D. Ill. 1995). And in *Servicios-Expoarma*, the Fifth Circuit was asked to determine the meaning of the term "delivery of the goods" under the Carriage of Goods by Sea Act—language which is notably different than the "receipt" by "the person entitled to delivery" language in the Montreal Convention. *Servicios-Expoarma, C.A. v. Industrial Maritime Carriers*, 135 F.3d 984, 987 (5th Cir. 1998). However, because the Court has found that EIW failed to make a sufficient factual showing that GE's agent collected the shipment from EIW more than 14 days before notice was provided on August 29, 2016, it need not address the legal viability of EIW's theory at this time.

> **B. EIW has not sufficiently demonstrated that the formal notice provisions of the Global Contract apply to the shipment at issue in this case; therefore, its motion for summary judgment based on Plaintiff's failure to comply with those provisions is denied.**

EIW has moved for summary judgment on the alternative ground that the Global Contract requires that "a formal claim [be] presented within two hundred seventy (270) days from the date of Service," and that GE Medical failed to provide any such formal claim. 56.1 Stmt. ¶¶ 9, 18. Because EIW has not put forth any evidence which would demonstrate that the terms of the Global Contract applied to the transaction at issue in this case, its motion for summary judgment on this ground is denied.

The only evidence EIW has put before the Court regarding the Global Contract is, first, an admission from both parties that the contract existed and that EIW and GE were parties to it, and second, evidence that the contract contains certain provisions requiring preliminary and formal claims before EIW can be held liable for any "act, omission or default in connection with the Services." 56.1 Stmt. ¶¶ 6, 8-9. EIW has not provided the portion of the contract which defines the term "Services" as it is used in the notice provision of the Global Contract or any evidence showing that the shipment at issue in this case was a "Service" under the Global Contract. Indeed, EIW has

8

not offered any evidence whatsoever connecting the Global Contract to the transaction at issue in this case. Instead, EIW relies solely on the argument that "[t]he Court . . . ruled in its earlier decision that the [Global Contract] applies to the transport in question." Memorandum in Support of EIW's Motion for Summary Judgment, Dkt. No. 47, at 3. EIW misinterprets the Court's previous ruling.

In the motion to dismiss, the Court was asked to determine whether Plaintiff had made a sufficient showing that EIW was a "carrier" under the Montreal Convention, such that a federal court in the United States could exercise subject matter jurisdiction over the claims in this case. *Indem. Ins. Co. of N. Am.*, 382 F. Supp. 3d at 307-09. In concluding that Plaintiff had indeed made a sufficient showing at that stage of the litigation, the Court relied on evidence before it showing that EIW had negotiated rates with GE for certain negotiated routes known as "keylanes," including a keylane that runs between Hino-shi, Japan and Shanghai, China—the route used for the transaction in this case. *Id.* at 306. It also relied on evidence that the August 2016 shipment "was included in a monthly data file sent by EIW, which listed all shipment activity occurring under the Global Contract." *Id.* at 309. Based on this evidence—which notably was not presented to the Court as part of the briefing of this motion—the Court found that Plaintiff had adequately demonstrated, for purposes of opposing Defendant's Rule 12(b)(1) motion, that EIW was an indirect carrier under the Montreal Convention, because it had shown that EIW provided services incidental to the shipment. *Id.* The Court did not—as EIW claims—definitively conclude as a matter of law that the terms of the Global Contract govern the transaction at issue. That question was not before the Court.

EIW's position appears to be an attempt to have its cake and eat it too: EIW wishes to apply the terms of the Global Contract to bar Plaintiff's claim without ever admitting that it played any role in the transaction at issue in this case. On this point, it is notable that EIW has again submitted a declaration to the Court—identical to one it submitted in support of its motion to dismiss—which states, "EIW played absolutely no role whatsoever in forwarding or transportation

9

of th[e] cargo [that is the subject of this lawsuit]." Gillespie Decl. at ¶ 5. If EIW continues to maintain that it played no role in the transportation of the cargo in this case, it is difficult to understand how it can simultaneously argue that the terms of a contract executed between EIW and GE would govern a claim regarding that transportation. EIW's position that it was not involved in this transaction may allow it to later argue that it is entitled to summary judgment on the issue of liability, or even to renew its motion to dismiss for lack of subject matter jurisdiction. But the Court cannot conclude based on the sparse record before it that the notice provisions of the Global Contract applied to the transaction at issue here such that any claim asserted by Plaintiff against EIW is barred. EIW's motion for summary judgment on this ground is denied.

## IV. CONCLUSION

For the reasons stated above, EIW's motion for summary judgment is DENIED.[10] The Clerk of Court is directed to terminate the motion pending at Dkt. No. 46.

SO ORDERED.

Dated: November 20, 2019
New York, New York

GREGORY H. WOODS
United States District Judge

---

[10] In its opposition to EIW's motion for summary judgment, Plaintiff argued that it is entitled to summary judgment on liability and damages based on the evidence presented. The same factual disputes which prevent the Court from granting summary judgment to EIW similarly prevent it from granting summary judgment to Plaintiff.